UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES ALAN SUMEREL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 2:12-cv-03628-JHE |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | |

**MEMORANDUM OPINION**[1]

Plaintiff James Alan Sumerel ("Sumerel") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). Sumerel timely pursued and exhausted his administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is AFFIRMED.[2]

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013.  See http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin in the case caption above.

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

**I. Factual and Procedural History**

Sumerel was a forty-six year old male at the time of the Administrative Law Judge ("ALJ") decision. (Tr. 20, 25, 145). Sumerel has at least a high school education and previously worked as a gas service dispatcher, store clerk, and customer service representative. (Tr. 31-32).

Sumerel filed his application for a period of disability, DIB, and SSI on September 3, 2009, alleging an initial onset date of March 1, 2004. (Tr. 23, 143-51). He subsequently amended the onset date to May 12, 2008. (Tr. 57, 126-29). The Commissioner denied Sumerel's application, (Tr. 84-88), and Sumerel requested a hearing before an ALJ. (Tr. 124). After a hearing, the ALJ denied Sumerel's claim on March 9, 2011. (Tr. 33). Sumerel sought review by the Appeals Council, but it declined her request on August 18, 2012. (Tr. 1-3). On that date, the ALJ's decision became the final decision of the Commissioner. On September 25, 2012, Sumerel initiated this action. (*See* doc. 1).

**II. Standard of Review**[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

---

[3] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Sumerel met the insured status requirements of the Social Security Act through June 30, 2009, and that Sumerel had not engaged in substantial gainful activity since March 1, 2004, the alleged onset date of his disability. (Tr. 25). At Step Two, the ALJ found Sumerel has the following severe impairments: obsessive-compulsive disorder ("OCD"), depressive

disorder, and status-post right wrist facture. (*Id.*). At Step Three, the ALJ found Sumerel does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26).

Before proceeding to Step Four, the ALJ determined Sumerel's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Sumerel has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), but is limited to lifting only ten pounds or less with both arms, using the right arm as support; furthermore, the ALJ found Sumerel limited to performing simple, unskilled, familiar, competitive tasks, can tolerate only infrequent or occasional contact with co-workers and the public, and only occasional changes in the workplace. (Tr. 27).

At Step Four, the ALJ determined Sumerel is unable to perform any past relevant work. (Tr. 31). At Step Five, the ALJ determined, based on Sumerel's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Sumerel could perform. (Tr. 32). Therefore, the ALJ determined Sumerel has not been under a disability and denied Sumerel's claim. (Tr. 33).

**V. Analysis**

**A.    Introduction**

Although the court may reverse a finding of the Commissioner only if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Sumerel failed to demonstrate a disability. Sumerel's only contention is the ALJ's erred by "rejecting" the opinion of a consultative psychologist, Dr. Cynthia Neville, in assessing Sumerel's mental RFC. The record indicates otherwise. The ALJ did not "reject" Dr. Neville's assessment, but accorded it "some weight" and properly explained her reasons for doing so.

      **B.**    **The ALJ Did Not Err by According Only "Some Weight" to Dr. Neville's Assessment**

The ALJ properly evaluated the relevant evidence and medical source opinions in assessing Sumerel's mental RFC. The weight accorded a doctor's opinion depends on the doctor's examining and treating relationship with the claimant, how consistent the opinion is with the record as a whole, the doctor's specialty, and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, a treating doctor's opinion is entitled to more weight, and an ALJ must give good reasons for discounting a treating doctor's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 404.927(c)(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An ALJ may discount a doctor's opinion, including treating doctor's opinion, when the doctor fails to provide objective medical evidence to support his or her opinion or if the doctor's opinion is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Moreover, opinions on some issues, such as the claimant's RFC and whether the claimant is "disabled" or "unable to work," "are not medical opinions, . . . but are, instead, opinion

on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling ("SSR") 95-5p, 1996 WL 374193 (1996).

On December 21, 2009, Dr. Neville performed a comprehensive psychological evaluation of Sumerel, (tr. 253-57), which the ALJ discussed at length. (Tr. 28-29). As the ALJ noted, Dr. Neville found Sumerel's mood and affect appeared relatively stable and appropriate, he could perform serial 7s, he remembered three out of three items immediately and following a five minute delay, he could interpret abstract proverbs, was of average intelligence and had insight into his problems. (Tr. 28, 255-56). The ALJ recognized Dr. Neville diagnosed Sumerel with OCD; major depressive disorder, recurrent, moderate; and opioid dependence, on Agonist Therapy. (Tr. 28, 256). The ALJ further recognized, despite this diagnosis, Dr. Neville concluded Sumerel could understand and remember work instructions, but his symptoms of OCD would probably interfere with his ability to follow through to a "moderate to severe degree" and that Dr. Neville maintained Sumerel's ability to interact appropriately with co-workers and supervisors, or handle typical work pressures, would be negatively impacted to "a moderate to severe degree." (Tr. 28-29, 257). The ALJ noted Dr. Neville did not define "moderate to severe." (Tr. 29). Despite Sumerel's contention, the ALJ did not "reject" Dr. Neville's opinion. Instead, the ALJ gave Dr. Neville's opinions, specifically those regarding diagnoses and prescribed functional limitations, "some weight" to the extent they were consistent with those of a state agency psychological consultant, Dr. Melissa Jackson, whose opinion the ALJ accorded "significant evidentiary weight." (Tr. 31).

Dr. Jackson reviewed the evidence of record, including Dr. Neville's consultative examination, and completed a psychiatric review technique ("PRT") form, assessing the same

7

medically determinable mental impairments as Dr. Neville did. (Tr. 261-74). Dr. Jackson also completed a mental RFC assessment, in which she concluded Sumerel would have some limitation in his ability to carry out work instructions, consistent with the opinion of Dr. Neville. (Tr. 275). Specifically, as the ALJ notes, Dr. Jackson assessed a moderate degree of limitation with respect to Sumerel's ability to carry out "detailed" instructions, while Dr. Neville concluded Sumerel's symptoms of OCD "would probably interfere with his ability to follow through [on work instructions] to a moderate to severe degree." (Tr. 28-29, 257, 275). With respect to social interaction, Dr. Jackson assessed moderate limitations in Sumerel's ability to interact appropriately with the general public, supervisors, and coworkers, while Dr. Neville stated Sumerel's abilities in this area would be impacted to "a moderate to severe degree." (Tr. 257, 276). In the PRT, Dr. Jackson noted Dr. Neville's opinion regarding the severity of the functional limitations caused by Sumerel's OCD and depression was "not consistent with objective evidence in the file." (Tr. 273).

Dr. Neville performed a one-time consultative examination of Sumerel and did not have an ongoing treating relationship with him. As such, she could not provide a detailed, longitudinal picture of his condition. *See Crawford*, 363 F.3d at 1160. Accordingly, Dr. Neville's opinion is not entitled to a presumption of controlling weight normally accorded to the opinion of a treating physician, nor was the ALJ required to articulate "good cause" for not giving it significant weight. *Id.* at 1159-60; *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

Nevertheless, the ALJ explained why she only gave Dr. Neville's opinion "some weight." (Tr. 28-29, 31). The ALJ pointed to treatment notes, which did not support the "moderate to severe" degree of limitation Dr. Neville imposed. (Tr. 29, 245). Specifically, the ALJ noted: "[i]n spite of

8

the 'moderate to severe' degree of limitation maintained by Dr. Neville, treatment notes from Northwest reveal the claimant's OCD and depression have been relatively stable." (Tr. 29). She further explained:

> In a progress note from April of 2008, it was documented the claimant was "doing well." In March and April of 2009, the claimant stated he was "feeling well emotionally," doing better" and "sleeping better." The claimant also reported in August of 2009 that he was "doing wonderful" and "couldn't be better." More recent progress notes, from February of 2011 and August of 2010, indicate the claimant was again sleeping well, "doing well," and overall had "no complaints." The limited mental health treatment evidence strongly suggests the claimant's symptoms have not been as limited as alleged.

(Tr. 29) (internal citations omitted). Accordingly, the ALJ did not err by according Dr. Neville's opinions only "some weight." The ALJ's finding that Dr. Neville's "moderate to severe" limitations was not fully consistent with the treatment notes is supported by the record. (*See* tr. 230-52).

### C.     The ALJ Did Not Err by Not Re-Contacting Dr. Neville for Clarification

Sumerel also argues the ALJ should have re-contacted and sought clarification from Dr. Neville regarding the meaning of the phrase "moderate to severe" because, he contends, it is ambiguous. (Doc. 10 at 10). As explained above, Dr. Neville is a consultative examiner, not a treating source. The regulations pertaining to consultative examinations require the ALJ to re-contact a consultative examiner only if her report is inadequate or incomplete. *See* 20 C.F.R. §§ 404.1519p(a), (b), 416.919p(a). Sumerel has not shown Dr. Neville's report was inadequate or incomplete.

Furthermore, there is no indication that the ALJ should have ordered another consultative examination to resolve any inconsistency in the evidence. An ALJ is not required to order a

consultative examination if the record contains sufficient evidence for the ALJ to make an informed decision. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Sumerel fails to demonstrate how another consultative examination was necessary for the ALJ to make an informed decision.

> D. The ALJ's Findings Regarding Contact with the Public and the VE's Testimony Were Proper

Sumerel also argues he was prejudiced by the ALJ's failure to develop the record because the ALJ's finding he could not perform his past relevant work as a store clerk and customer service representative, which involve contact with the public, is inconsistent with the VE's testimony he could be expected to perform the job of a storage rental clerk. (Doc. 10 at 10-11). Notably, neither the ALJ's RFC nor Dr. Neville's opinion precluded contact with the public, and the hypothetical posed to the VE included the limitation the ALJ assessed in the RFC finding, *infrequent or occasional* contact with the public. (Tr. 27, 76). The VE testified an individual with Sumerel's RFC, including this limitation, could work as a storage facility rental clerk. (Tr. 75-76). While the Dictionary of Occupational Titles indicates this job involves "dealing with people," there is no indication it requires more than infrequent or occasional contact with the public. Furthermore, Sumerel does not argue he is unable to perform the two other jobs the VE identified, garment sorter and inspector. (Tr. 32-33, 77).

Sumerel fails to show that the ALJ erred in her consideration of Dr. Neville's opinion or in the weight she accorded to the opinion, and substantial evidence supports the Commissioner's decision.

## VI. Conclusion

Because the Commissioner's decision is based on substantial evidence and the ALJ applied proper legal standards, it is AFFIRMED and this action will be DISMISSED WITH PREJUDICE.  A separate order will be entered.

DONE this 14th day of April, 2014.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE